## STODDARD MANUFACTURING CO. *v.* MILLER.

1. SETTLEMENT—BREACH OF WARRANTY—WAIVER.

By assenting to the correctness of an account for machinery purchased, with knowledge of its failure to comply with the warranty under which it was sold, the buyer waives his rights under the warranty.

2. SALE OF MACHINERY—WARRANTY.

A contract for the sale of agricultural machinery between the manufacturer and a dealer contained a general warranty, followed by the provision that, if a machine should fail to do good work, notice should be given to the vendor, and time allowed to put it in order, and that the use of a machine for longer than one day, without giving notice of any defect, should constitute an acceptance. *Held*, that the conditions stated were applicable only to machines resold, and not to those that had not been set up or operated.

3. WRITTEN ORDER—PAROL EVIDENCE.

Parol evidence that, by an order for "two square feeding shafts, 4 ten-hoe drills," it was intended only to order two shafts *for* 10-hoe drills, is admissible, in a suit against the purchaser, to rebut the effect that said order might otherwise have upon his contention that drills of the same kind previously purchased were defective.

Error to Sanilac; Beach, J. Submitted October 23, 1895. Decided November 5, 1895.

*Assumpsit* by the Stoddard Manufacturing Company against Adam Miller and another for machinery sold. From a judgment for plaintiff, defendants bring error. Reversed.

*E. C. & H. A. Babcock*, for appellants.

*Avery Bros. & Walsh*, for appellee.

McGRATH, C. J. Defendants are dealers in farming implements at Minden City. They had had dealings with the Farmers' Friend Manufacturing Company, and in

December, 1892, entered into a written contract with said company for six harrows, nine 9-hoe Farmers' Friend drills, and one 10-hoe Farmers' Friend drill. The agreement contemplated further orders, and prescribed the terms. It granted to defendants the exclusive right to sell in certain territory, and provided that defendants should make every effort to extend the trade in the territory, sell no competing machines, and order as many more machines as the territory might require. It provided that the company would replace defective parts, and furnish repairs at list prices, less 25 per cent. It contained a further provision that—

"The machines furnished under this contract are warranted to be well made, of good material, and, if properly handled, to do good work. They are to be set up and operated according to directions. If any one fails, owing to defects or otherwise, notice must be given to the Farmers' Friend Manufacturing Company, Dayton, Ohio, and time allowed to put it in order or operate it. The use of a machine longer than one day, without notice of defect, shall be evidence that it is accepted, and this warranty shall cease.

"(Signed)        .        FARMERS' FRIEND MNFG. CO.,
                            "By GEORGE A. WOODFORD."

On August 23, 1893, defendants wrote to Woodford a letter as follows:

"Please ship me at wonts to Minden City, wone rite stele weel for a drill Two square feeting schafts. 4 ten hoe drills also some note blanks for drills. Send it at wonts without daylay."

Upon receipt of this order the company sent four 10-hoe drills to defendants. Some correspondence was evidently had respecting this shipment, defendants claiming that they had intended to order two shafts for 10-hoe drills, and not to order four 10-hoe drills; but defendants retained the drills. Under the contract these drills were to be paid for in 90 days. Plaintiff sues as assignee of the account. Defendants set up a breach of the warranty.

In December, 1893, one Quig called upon the defendants for a settlement of the account. Defendants had on hand at that time five of the 9-hoe and four 10-hoe drills. Quig says that there was a partial settlement at that time, but that defendants refused to pay for the goods on hand, but wanted him to carry the articles on hand over into the next year's contract, which he refused to do; that at that time no mention was made to him that the goods were defective, but that the mistake in the letter of August 23d was referred to by defendants. The statement presented at that time describes the goods unsold as "on hand (not settled)."

It seems to be conceded that the drills were not the same as those which had been previously sold to defendants; that a steel frame had been substituted for a wooden frame. Defendants explained this by saying that "they changed the drill into a steel frame, and put the sprocket in the middle, and put the chain on the feed shaft, and it springs the shaft in the center, and stops their working." Defendants' testimony tended to show that they had sold several of these drills, which proved defective, and the parties to whom sold refused to pay for them; that they had tried to remedy this defect, but without success; that when Quig came there they explained the difficulty to him, told him that the drills would not work, that purchasers had refused to pay for them, and that they were useless; that they refused to pay for them, and requested Quig to take them back; that they told Quig that they would in no case agree to pay for them until sold, and that Quig agreed to carry them until they were sold.

The court instructed the jury that—

"If there was an agreement to postpone the payment for these nine implements to the season of 1894, there can be a recovery for the plaintiff for $120 only, and interest from December 19, 1893, to this time. If the extension was made, it would also be a waiver on the part of the defendants as to defects as to workmanlike quality of the

implement; that is, the defendants claim that at the time
he called attention to his claim for damages, but that at
the same time the time for payment was extended. Now,
if that was a fact, that would be a waiver of these defects;
it would take these defects out of the case, if there was an
extension of time. If you find as a matter of fact that
there was no extension of time for the payment for these
nine drills, you will then consider the question of dam-
ages. Such damages must be, confined to the nine
machines on hand, for the reason that the business con-
cerning this machinery up to that date was settled at
that time. If you find they did not comply with the war-
ranty, and that the agent was notified of these defects,
the measure of damages, if any you would find, would be
the difference between the contract price of the machines
and the actual value of the machines as you shall find it
to be."

.We think the court misapprehended the effect of
defendants' testimony. The parties did not arrive at a
settlement in December, 1893. Quig does not say that
they did. He says, generally, that there was "a partial
settlement." If defendants settled the account as to the
goods not on hand, and agreed to that account, they are
concluded thereby. The controversy seems to have been
over the drills on hand. Quig was then representing the
company. No question seems to have been raised as to
his lack of authority. If at that time defendants in good
faith made the complaints alleged to have been made,
and it was agreed that the drills should be carried by the
company until sold, a recovery should not have been
allowed, irrespective of any formal compliance with the
terms of the warranty. Of course, if at that time there
was a promise to pay in consideration of an extension of
time, and the extension of time was granted, another
question would arise; but Quig does not claim that there
was either a promise to pay or an extension of time.

The jury evidently found that there was no extension
of time; but the court, in the course of the trial, clearly
intimated that, in the absence of notice under the con-
tract, defendants could not go into the question of the

defects in the drills, and restricted them in their proofs upon the question of the depreciated value for that reason. It is evident that the clauses in the contract following the warranty were imported into the contract in question from a contract for the sale of an individual machine. It was not expected that defendants would set up and operate these machines or use them. They purchased them to sell again. The restrictions may be applied to drills sold by them, but not to those which had not been set up or operated. Defendants had sold several of these drills during that season, and had been evidently endeavoring to satisfy the purchasers respecting them. The complaint was not as to a defective part, but was one going to the whole machine, destroying its utility. It was a structural trouble.

As tending to rebut any presumption that might arise as to the effect of an order given August 23d for four more of the drills complained of, we think that the defendants were entitled to show that a mistake was made in that order.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.